UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAUL WILSON | CIVIL ACTION |
| VERSUS | NO. 08-1518 |
| TECO OCEAN SHIPPING, INC. | SECTION "C"(3) |

**ORDER AND REASONS**[1]

Before the Court is Third-Party Plaintiffs TECO Ocean Shipping, Inc. ("TECO") and Buck Kriehs Marine Repair LLC's ("Buck Kriehs") Motion for Summary Judgment on Third Party Complaint. (Rec. Doc. 78). Having considered the record, memoranda of counsel, and the applicable law, the motion is denied for the reasons to follow.

### I. Background

TECO leased a barge from U.S. Banc Corp, its owner, and contracted with Buck Kriehs to perform certain maritime-related work on it. (Rec. Doc. 78-2 at 1). Buck Kriehs, in turn, sub-contracted with H.P.M.S., Inc. ("HPMS") to perform electrical repairs on the barge. (Rec. Doc. 22 at 2). It was in conducting these repairs that the Plaintiff Paul Wilson, a maritime electrician, was injured. *Id*. Plaintiff filed an amended complaint against TECO and Buck Kriehs, alleging unsafe working conditions of the barge and negligence of the Defendants. *Id*. TECO and Buck Kriehs filed a third-party complaint against Plaintiff's employer, HPMS. (Rec. Doc. 24 at 7). TECO and Buck Kriehs now seek summary judgment on their claims against HPMS, alleging 1) that in several documents between it and Buck Kriehs, HPMS agreed to indemnify and hold harmless Buck Kriehs and TECO, and 2) that HPMS breached its contract with Buck Kriehs by failing to carry certain

---

[1] Gillian Gurley, a third-year law student at Tulane University, assisted in the preparation of this document.

required insurance coverages. (Rec. Doc. 78-1 at 1-2). HPMS denies that the contracts between the parties provide unequivocal evidence that it agreed to indemnify Buck Kriehs and TECO for their own negligence, and denies that it failed to carry the proper insurance coverage in breach of its agreement with Buck Kriehs. (Rec. Doc. 111 at 8,13).

## II. Law & Analysis

Summary judgment is only appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist; if it meets that burden, the nonmoving party must then come forth to establish the specific material facts in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

**A. The Contracts at Issue are Maritime in Nature**

Contracts which are maritime in nature are governed by federal maritime law. The key determination is "the nature of the contract, as to whether it has reference to maritime service or transactions." *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961). The Fifth Circuit has stated "[a] principal determinant is the relation the contract bears to the ship....A contract relating to a ship in its use as such, or to commerce...is subject to maritime law." *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (quoting 1 BENEDICT ON ADMIRALTY § 183 (7th ed. 1985)). As long as the vessel has been in navigation, any contract for its repair is a maritime contract. *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 412 (5th Cir. 1982). From the description of the contracts at issue, each seems to have been concerned with work or repairs on the barge leased by TECO. (Rec. Docs. 78-4, 78-5). Buck Kriehs agreed to perform maritime-related work on the barge, which included

electrical work, and it was for that purpose that it subcontracted with HPMS. Plaintiff Wilson self-identified as a "maritime electrician." (Rec. Doc. 22 at 2). The Court finds that they are maritime contracts, and federal maritime law applies.

**B. Interpreting the Indemnity Provisions**

Indemnity clauses in maritime contracts are generally enforceable, and the interpretation of such an indemnity clause is ordinarily governed by principles of federal maritime law. *Corbitt v. Diamond Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981). Under either federal maritime law or state law, "a court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous." *Id*. at 333-34. If the disputed language is ambiguous, however, inquiry must be made into the intent of the parties. Indemnity clauses are generally strictly construed. *M.O.N.T. Boat Rental Services, Inc. v. Union Oil Company of California*, 613 F.2d 576, 580 (5th Cir. 1980).

> A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

654 F.2d at 333. Therefore, if the indemnity provisions of the contracts at issue clearly contemplate that HPMS owes indemnification to TECO as well as to Buck Kreihs, summary judgment is appropriate. If the indemnity provisions do not expressly purport to provide indemnification for negligent acts on the part of the indemnitee, then summary judgment cannot be granted, because Plaintiff has asserted negligence on the part of the Defendants.

The relevant contracts are the General Services Agreement between TECO and Buck Kreihs,

the Hold Harmless Agreement between Buck Kreihs and HPMS, and the Subcontract Purchase Order between Buck Kreihs and HPMS. (Rec. Docs. 78-4, 78-5, 78-6). The General Service Agreement states:

> Contractor shall defend, protect, indemnify and hold harmless Company [TECO]...from and against any and all losses, damages, costs, expenses, claims, causes of action, liens, obligation to indemnify another, lawsuits and liabilities of every kind and character, on account of any such illness, occupational disease, injury, death, or property damage, arising out of or relating in any way to the work or services performed by the Contractor [Buck Kreihs] for Company or Contractor's presence on TOS [TECO] property even if...partially caused by TOS's fault or negligence.

(Rec. Doc. 78-4 at 3, ¶10(B)). The Agreement goes on to say, in capital letters, "however, Contractor shall have no responsibility or liability whatsoever for any illness, occupational disease, injury, death or property damage caused solely by TOS's fault or negligence." *Id*. This Agreement sets forth clearly that Buck Kreihs must indemnify TECO unless TECO is solely at fault for the injury.

What is less clear, however, is whether Buck Kreihs' subcontractor, HPMS, has agreed to indemnify TECO in the same manner. The Hold Harmless Agreement between Buck Kreihs and HPMS provides in pertinent part,

> H.P.M.S. Inc. does agree to indemnify and hold harmless BUCK KREIHS MARINE REPAIR, LLC and its employees, agents, and representatives, from and against any loss, expense, claim or demand and to defend at its own expense any an[d] all suits or actions for personal injury to or death of its employees, the employees of BUCK KREIHS MARINE REPAIR, LLC, and/or third person...in any way arising out of or connected with the performance by INDEMNITOR of work on or about the premises of BUCK KREIHS MARINE REPAIR, LLC or elsewhere.

(Rec. Doc. 78-5 at 1). This Agreement clearly provides that HPMS must indemnify Buck Kreihs, but does not clearly and unequivocally set forth a requirement that HPMS must also indemnify TECO, with whom it did not have a contract. Nor does the Hold Harmless Agreement include

language indemnifying Buck Kreihs for its own negligent actions, which was specifically excluded in the General Service Agreement between Buck Kreihs and TECO if TECO was solely at fault.

To support its assertion that HPMS owes it indemnity, TECO points to the last document in evidence, the Subcontract Purchase Order. (Rec. Doc. 78-6). At the bottom of that secondary agreement–an order for goods or services–are terms, including:

> To the full extent of applicable laws, you [HPMS] agree to indemnify and hold [sic] Kreihs, **its contractors**, subcontractors and employees from and against any loss, expense, claim or demand, and to defend against any and all suits or actions for personal injury to or death of your employees, or the employees of your agents, subcontractors or suppliers or the employees of Kreihs or any third party arising out of or in any way connected with the performance by you under this order[.]

(Rec. Doc. 78-6) (emphasis added). TECO argues that as a "contractor" of Buck Kreihs, the clause in the Subcontract Purchase Order extends HPMS's indemnification obligation to it. (Rec. Doc. 78-1 at 6). While it is plausible that the term "contractor" refers to TECO under these circumstances, the evidence presented by the document is not substantial enough to warrant summary judgment for the third-party Plaintiffs. On the face of the documents submitted as evidence, the extent of the indemnification provision as to HPMS is ambiguous, and third-party Plaintiffs have not provided clear facts that the parties intended for HPMS to indemnify TECO as alleged. Moreover, that "contractor" could refer to TECO is the strongest argument it puts forth, and yet the phrase "you agree to indemnify...Kreihs, [and] its contractors" appears only in the Subcontract Purchase Order, which is a secondary agreement to the main contract between Buck Kreihs and HPMS.

In addition, Plaintiff Wilson has alleged that Buck Kreihs and TECO were negligent and that their negligence proximately caused his injury. (Rec. Doc. 22 at 2-4).The three documents in evidence each provide different approaches to the indemnitor's liability for the indemnitee's

5

negligent acts. The Subcontract Purchase order provides that "[u]nder no circumstances shall Kreihs ever be responsible to you or any party claiming by, through or under you for damages of any kind or nature, directly or indirectly, in contract or tort, or otherwise, **unless caused solely and only by the negligence of Kreihs, which negligence must be affirmatively established**[.]" (Rec. Doc. 78-6) (emphasis added). It does not provide that HPMS shall indemnify Buck Kreihs when its negligence is only a contributing factor to a claim. The Hold Harmless Agreement between HPMS and Buck Kreihs says nothing about indemnifying Kreihs for its own negligent acts. (Rec. Doc. 78-5). The most comprehensive statement on indemnifying for negligent acts appears in the General Services Agreement between TECO and Buck Kreihs, which clearly provides that Buck Kreihs owes indemnity for TECO's negligent acts, as long as those acts are not the sole cause of the harm. (Rec. Doc. 78-4). It is therefore not clear from the evidence presented what indemnity, if any, HPMS would owe to TECO and Buck Kreihs for their negligent acts which led to the Plaintiff's harm.

Because Plaintiff has asserted that TECO and Buck Kreihs' negligence was the cause of his harm, and because the evidence presented does not clearly set out that HPMS is obliged to indemnify the third-party Plaintiffs, the Motion for Summary Judgment may not be granted on this point, either.

## C. Breach of Contract Claim

Third-Party Plaintiffs allege that HPMS breached its contract and seek summary judgment on that claim, as well. (Rec. Doc. 78-1 at 7). They claim that HPMS was obliged to carry certain employer's liability insurance and comprehensive general liability insurance, and failed to do so. *Id*. Beyond stating this allegation, however, Third-Party Plaintiffs provide no evidence that HPMS did not retain the requisite insurance policies. Therefore, they fail to carry their burden for summary

6

judgment on that point.

### III. Conclusion

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is DENIED. (Rec. Doc. 78).

New Orleans, Louisiana, this 22nd day of February, 2011

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**